# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

TUESDAY S. BANNER,

    Plaintiff,

v.                                     Civ. No. 13-1625-LPS

DEPARTMENT OF HEALTH AND
HUMAN SERVICES DIVISON FOR THE
THE VISUALLY IMPAIRED,

    Defendant.

---

Tuesday S. Banner, New Castle, Delaware, Pro Se Plaintiff.

Joseph Clement Handlon, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

March 19, 2018
Wilmington, Delaware

STARK, U.S. District Judge:

## I. INTRODUCTION

Plaintiff Tuesday S. Banner ("Plaintiff"), who proceeds *pro se* and was granted *in forma pauperis* status, filed this employment discrimination action on September 30, 2013, pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, and the Delaware Discrimination in Employment Act ("DDEA"), 19 Del. C. §§ 710 *et seq.* (D.I. 2) The matter proceeds on the second amended complaint. (D.I. 24) The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Presently before the Court is the motion for summary judgment of Defendant Delaware Department of Health and Human Services, Division for the Visually Impaired ("Defendant") and Plaintiff's opposition thereto.[1] (D.I. 37, 39, 40).

## II. BACKGROUND

The case proceeds on a charge of discrimination, No. 17C-2012-00342, dated April 16, 2012, in which Plaintiff alleges discrimination occurred on March 16, 2012.[2] The charge complains of retaliation and discrimination based upon religion (Muslim) with the adverse employment action being a one-day suspension. The charge states that the suspension was "due to retaliation for religious discrimination and sexual harassment" based on "previous discrimination complaints to human resources." (D.I. 14 at 5)

**The Second Amended Complaint.** The Second Amended Complaint alleges that Plaintiff filed grievances with Human Resources on January 27, 2010 that pertained to disability and religious discrimination as well as sexual harassment. (D.I. 24 at ¶ 22) A Step II grievance hearing was held on January 13, 2011, and the grievance was denied as untimely and without merit. (*Id.* at ¶ 27)

---

[1] Plaintiff filed identical responses at D.I. 39 and 40 in opposition to the motion for summary judgment, which she refers to as a motion to dismiss.

[2] All other claims have been dismissed. (*See* D.I. 12, 13, 22, 23)

1

Plaintiff alleges that throughout 2011, Plaintiff was approached by Robert Doyle ("Doyle") who made repeated comments of a sexual and religious nature. (*Id.* at ¶ 29) Plaintiff did not make a formal complaint. Instead, she informed a Human Resources representative of Doyle's behavior, but received no assistance. (*Id.*) Plaintiff alleges that on February 20, 2012, Doyle approached her "in an uncomfortable manner" and tried to engage her in a non-work related conversation and then "stormed away" because Plaintiff dismissed his negative remarks. (*Id.* at ¶ 35) Plaintiff alleges that on the same day, Doyle saw Plaintiff and a Muslim consumer getting into Plaintiff's car and immediately believed that she was "up to no good." (*Id.*)

On February 28, 2012, Plaintiff was informed by Vocational Rehabilitation Administrator Helen Harper ("Harper") that she had been directed by Doyle to suspend Plaintiff for leaving the campus a week earlier. (*Id.* at ¶ 21) The next day, Senior Vocational Rehabilitation Counselor Genelle Fletcher ("Fletcher") told Plaintiff that she would be receiving a one-day suspension for failing to adhere to supervisory directives and not following the chain of command for out-of-office breaks. (*Id.* at ¶ 32) Plaintiff alleges that Fletcher investigated the matter and was advised that Plaintiff had informed Harper she was taking a break as usual. (*Id.* at ¶ 33) Fletcher reported the information to Doyle, who instructed Fletcher to "suspend Plaintiff anyway and she did." (*Id.*) Plaintiff served the one-day suspension in early to mid-March. On March 20, 2012, Plaintiff complained to Human Resources that she was tired of being sexually harassed by Doyle and asked what could be done. (*Id.* at ¶ 37) At that point, Plaintiff filed a charge of discrimination alleging religious discrimination and retaliation. (D.I. 14 at 5) The matter proceeds on the charge of discrimination, No. 17C-2012-00342, and the allegations found in paragraphs 1, 4, 5 through 42, and 71 of the Second Amended Complaint.

**Evidence of Record.** In 2010, Plaintiff's immediate supervisor was Fletcher, a vocational senior counselor who supervised Defendant's administrative and employment specialists. (D.I. 48 at

¶¶ 2-3) On January 15, 2010, Plaintiff submitted three grievances. One concerned pay for her new position and harassment over her right to take time off (D.I. 14 at 7); one concerned the unjust hiring of another person for a position Plaintiff had applied for (*id.* at 26); and one complained of actions taken against her when she took time off to care for her sick children (*id.* at 28).

When Plaintiff's yearly performance review took place in October 2010, Fletcher instructed Plaintiff to improve her punctuality. (D.I. 37-1 at Ex. A; D.I. 38 at ¶ 5) In March 2011, Fletcher addressed, in writing, Plaintiff's punctuality issues and identified instances during the past three months when Plaintiff had either been late to work or her workday whereabouts were unaccounted for. (D.I. 37 at Ex. B; D.I. 38 at ¶ 9) The letter, dated March 24, 2011, set forth the times during the month of March when Plaintiff's whereabouts were unknown to her supervisors, as follows: (1) on March 1, 2011, Plaintiff was missing from the office from 10:00 a.m. until noon; (2) on March 10, 2011, Plaintiff left her desk for three hours and during that time her whereabouts were unknown to her supervisors; and (3) on March 15, 2011, Plaintiff was missing from work for approximately two hours, from 10 a.m. until noon. (D.I. 37-1 at Ex. B) The March 24, 2011 letter advised Plaintiff that her behavior was unacceptable, and Plaintiff was instructed that, before leaving her desk for more than 10 minutes, she was to notify Fletcher or, if Fletcher was unavailable, to notify Harper. (*Id.*) Fletcher reminded Plaintiff that her habitual tardiness was unacceptable and pointed out that Plaintiff was late to work 12 of the past 19 workdays. Fletcher told Plaintiff she expected her to report to work at the 8:30 a.m. scheduled time. (*Id.*) Plaintiff was also told that if she was going to be late, she was required to inform either Fletcher or speak to a live person (i.e., no messages) on the team by 8 a.m. that morning. (*Id.*)

Plaintiff requested an accommodation to help her balance her work and parental responsibilities. (*Id.* at Ex. C) In November 2011, Defendant agreed to Plaintiff's request for an alternative work schedule. (D.I. 37-1 at Ex. C; D.I. 38 at ¶ 13) The accommodation allowed

3

Plaintiff to leave work each day from 3 p.m. to 4:15 p.m., so that she could pick up her children and return to work. (D.I. 37-1 at Ex. C; D.I. 38 at ¶ 13) The November 1, 2011 memorandum that authorized the accommodation admonished Plaintiff to be punctual and warned her that continued tardiness would result in discipline. (D.I. 37-1 at Ex. A; D.I. 38 at ¶ 15)

The affidavit of Gregory C. Hubbard ("Hubbard") states that on the morning of February 20, 2012, Doyle approached Plaintiff at her work station while Plaintiff and Hubbard were talking. (D.I. 14 at 45) As Hubbard left, he heard Doyle ask Plaintiff, "is that your new boyfriend?" (*Id.*) On February 20, 2012, Plaintiff was seen leaving the office; she was gone for approximately 30 minutes and, when asked, stated that she went to a convenience store. (D.I. 38 at ¶¶ 17-19) According to Hubbard, he was with Plaintiff when she left the office and Doyle, who was in the parking lot, saw Hubbard and Plaintiff as they were getting into her car. (D.I. 14 at 45)

According to Fletcher, Plaintiff left the workplace despite the instruction that she was to inform either Fletcher or Harper whenever she left her desk for more than ten minutes. (*Id.* at ¶ 18) According to Plaintiff, she notified a superior and was given permission to leave the work premises. (D.I. 14 at 16) Fletcher states that, because Plaintiff failed to properly notify her supervisors when leaving the office, her calendar and badge entries were reviewed. (D.I. 38 at ¶ 20) The review revealed that Plaintiff had been late to work ten times during the past month and, sometimes, she was over 30 minutes late. (*Id.*) According to Fletcher, because Plaintiff had repeated tardiness and unauthorized absences from work, Fletcher suspended Plaintiff for one day without pay. (*Id.* at ¶ 21) On March 8, 2012, Plaintiff received a hand-delivered letter advising her of the one-day suspension and the reasons for it. (D.I. 37-1 at Ex. D; D.I. 38 at ¶ 22) The letter advised Plaintiff of her right to a pre-suspension meeting. (D.I. 37-1 at Ex. D)

On April 26, 2012, Plaintiff received suspension papers, 47 days after she had served her one-day suspension. (D.I. 14 at 44) On April 30, 2012, Plaintiff authored a nine page memo to

4

William Wharton ("Wharton"), Human Resources Specialist, and made religious discrimination and sexual harassment claims against Doyle. (D.I. 14 at 9-9) The memo contains a litany of complaints against Doyle, including: (1) Plaintiff was not considered for a promotion in November 2009, having been told it was due to her poor attendance and tardiness, but she believes she did not receive the promotion because she is Muslim and the person chosen attends Doyle's church; (2) Plaintiff submitted a grievance on December 6, 2010, after she was reprimanded for inappropriate dress, and she referred to previous discussions in August and September of 2010 when Doyle sought "information to feed his thirst for his want of [Plaintiff]," adding that Doyle is infatuated with the clothes Plaintiff wears;[3] (3) on April 26, 2011, Doyle told Plaintiff that he liked her outfit; (4) in July 2011, Plaintiff discovered that Doyle had repeatedly talked to individuals outside of work about Plaintiff and showed individuals outside of work a picture of Plaintiff's breast; (5) in December 2011, Plaintiff sought a transfer to another unit, but it did not take place due to logistical problems with personnel placement; and (5) on February 20, 2012, Doyle saw Plaintiff leave and return to the work premises after approximately one-half hour. (*Id.*)

On May 10, 2012, Plaintiff submitted a grievance asking that the suspension be removed from her personnel file, and she sought reimbursement of wages and time lost and a transfer to another unit. (D.I. 14 at 44) On June 22, 2012, Wharton advised Plaintiff that he had investigated her complaints against Doyle, was unable to substantiate the allegations, and considered the matter closed. (D.I. 14 at 19)

Defendant moves for summary judgment on the grounds that there is no evidence of unlawful harassment, discrimination, and/or retaliation under Title VII and, therefore, summary

---

[3] The grievance, dated December 3, 2010, and received December 6, 2010, was denied on the grounds that Plaintiff had previously been counseled regarding her dress. In addition, it was determined there was no harassment, intimidation, or retaliation. (D.I 14 at 33-34, 40-43)

5

judgment is appropriate as a matter of law. Plaintiff opposes, contending that Defendant has not responded to her discovery requests and has failed to meet its burden to support its motion because there is insufficient evidence. She asks the Court to instruct Defendant to respond to her discovery requests.

## III. LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be -- or, alternatively, is -- genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing

6

summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. Discrimination by Reason of Sex and Religion under Title VII and the DDEA

Plaintiff raises employment discrimination claims under Title VII and the DDEA claiming religious discrimination and sexual harassment. Title VII states that "[i]t shall be an unlawful employment practice for an employer to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Similar to Title VII, the DDEA prevents discrimination by an employer on the basis of race and age.[4] *See* 19 Del. C. § 711(a).

---

[4] The Court considers Plaintiff's discrimination claims under both federal and state law, as the law is unsettled as to whether a plaintiff may proceed under Title VII as well as the DDEA. *See Phifer v.*

A plaintiff may prove discrimination by direct evidence, as set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-46 (1989), or indirectly, through the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Shah v. Bank of Am.*, 346 F. App'x 831, 834 n.2 (3d Cir. Sept. 10, 2009) (stating claims under DDEA are subject to same analysis as Title VII).

Here there is no direct evidence of discrimination, so the Court turns to the *McDonnell Douglas* burden-shifting framework. Under this framework, Plaintiff must first establish a prima facie case of discrimination by proving that: (1) she is a member of a protected class; (2) she suffered some form of adverse employment action; and (3) this action occurred under circumstances that give rise to an inference of unlawful discrimination, such as might occur when a similarly-situated person not of the protected class is treated differently. *See Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999). To succeed on a status discrimination claim, a plaintiff must show that an improper consideration was "a motivating factor" for the adverse action. *See e.g., University of Texas Southwestern. Med. Ctr. v. Nassar*, 570 U.S. 338, 133 S. Ct. 2517, 2533 (2013); 42 U.S.C. § 2000e-2(m). The elements of a prima facie case may vary depending on the facts and context of the particular situation. *See Pivirotto v. Innovative Sys. Inc.*, 191 F.3d 344, 352 (3d Cir. 1999).

If a plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant employer to proffer a "legitimate non-discriminatory" reason for its actions. *See Reeves*, 530 U.S. at

---

*Sevenson Envtl. Servs., Inc.*, 619 F. App'x 153, 156 (3d Cir. July 27, 2015); 9 Del. C. § 714(c) ("[The plaintiff] shall elect a Delaware or federal forum to prosecute the employment discrimination cause of action so as to avoid unnecessary costs, delays and duplicative litigation. A [plaintiff] is barred by this election from filing cases in both [the Delaware] Superior Court and the federal forum."); *compare Brangman v. AstraZeneca, LP*, 952 F. Supp. 2d 710, 724 (E.D. Pa. 2013) (concluding that § 714(c) does not bar plaintiff from bringing both Title VII and DDEA claims in federal court) *with Daughtry v. Family Dollar Stores, Inc.*, 634 F. Supp. 2d 475, 483 n.13 (D. Del. 2009) (concluding that § 714(c) precludes plaintiff from pursuing relief under both Title VII and DDEA).

142. If a defendant meets this burden, the burden shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. *See id.* at 142-43. To do this, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Harding v. Careerbuilder, LLC*, 168 F. App'x 535, 537 (3d Cir. Feb. 27, 2006) (internal quotation marks and citations omitted).

Plaintiff is a Muslim woman who evidently performed her job to Defendant's satisfaction for several years, and who was suspended for one day in 2012. She alleges she was suspended due to retaliation for religious discrimination and sexual harassment complaints. Although Plaintiff has satisfied the first three of the four prima facie elements, she has not met pointed to any evidence creating an inference that the decision to suspend her for one day was discriminatory. *See Sarullo v. United States Postal Serv.*, 352 F.3d 789, 799 (3d Cir. 2003).

Plaintiff presented no evidence in opposition to Defendant's motion for summary judgment. Plaintiff attached to her amended complaint (D.I. 14, which is not the operative complaint) a memo to Wharton and stated she "believed" she was not given a promotion in 2009 because she is Muslim. However, nothing of record ties this to her 2012 suspension. The memo contains a litany of complaints regarding the conduct of Doyle. Those complaints are better addressed as a hostile work environment claim, and will be discussed below. In short, there is nothing in the record to indicate that the one-day suspension in 2012 was based upon Plaintiff's sex or religion.

Even had Plaintiff made a prima facie case, she has not produced any evidence to rebut Defendant's claim that she was suspended due to her constant attendances issues, absences from work, and failure to follow instructions she had been given to correct the issues. Assertions of pretext and denials of the veracity of an employer's non-discriminatory justification for termination, without countervailing evidence, are not sufficient to defeat summary judgment. *See Sarullo*, 352 F.3d at 800. Nothing before the Court would permit a reasonable factfinder to reject the proffered reasons for Plaintiff's one-day suspension. Nor are Defendant's proffered reasons for its actions weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find them unworthy of credence. *See id.* Construing the evidence in the light most favorable to Plaintiff (as the Court does throughout its analysis in this Opinion), she has not provided evidence from which a reasonable factfinder could either disbelieve Defendant's articulated reasons, or believe that a discriminatory reason was more likely than not the cause of the employment action. *See Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 283 (3d Cir. 2001) (reiterating that "it is not enough for a plaintiff to show that the employer's decision was wrong or mistaken, because the issue is whether the employer acted with discriminatory animus").

Accordingly, the Court will grant Defendant's motion for summary judgment on the discrimination claims based upon sex and religion.

### B. Retaliation

Plaintiff alleges she was suspended based upon previous discrimination complaints to Human Resources. Defendant moves for summary judgment on the grounds that Plaintiff cannot demonstrate that Defendant's actions were a pretext for retaliation.

To establish a prima facie case of retaliation, a plaintiff must show: (1) she engaged in a protected activity; (2) after or contemporaneous with engaging in that protected activity, she was subjected to an adverse employment action; (3) the adverse action was "materially adverse;" and

10

(4) there was a causal connection between her protected activity and the adverse employment action. *See Hare v. Potter*, 220 F. App'x 120, 128 (3d Cir. Mar. 21, 2007) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Both formal and informal complaints of discrimination or harassment constitute protected activity. *See Speed v. WES Health Sys.*, 93 F. Supp. 3d 351, 356 (E.D. Pa. 2015).

"Although timing and ongoing antagonism have often been the basis for the causal link, [Third Circuit] case law clearly has allowed a plaintiff to substantiate a causal connection for purposes of the prima facie case through other types of circumstantial evidence that support the inference." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000). An individual is not protected from all retaliation, only from retaliation that produces an injury or harm. *See Burlington*, 548 U.S. at 67. Hence, a "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (citations and internal quotation marks omitted). The Court looks to material adversity because "it is important to separate significant from trivial harms." *Id.* If the plaintiff proves a prima facie retaliation claim, the *McDonnell Douglas* burden-shifting analysis described above applies. *See Hare*, 220 F. App'x at 127.

Plaintiff contends she engaged in protected activity when she made complaints of discrimination to Human Resources. The record reflects that Plaintiff made complaints, either formally or informally, in November 2009, January, April, May, and December 2010. When considering whether there is a causal connection between Plaintiff's protected activity and Defendant's adverse action, the Court considers a "broad array of evidence," including whether there is an "unusually suggestive" temporal proximity between the protected activity and adverse action. *Moody v. Atlantic City Bd. of Educ.*, 870 F.3d 206, 221 (3d Cir. 2017). An inference of "unduly suggestive" temporal proximity begins to dissipate where there is a gap of three months or more

11

between the protected activity and the adverse action. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007). The one-day suspension took place in March 2012, well over one year following Plaintiff's formal and informal complaints in 2010. Plaintiff has not established close temporary proximity for purposes of the causation element for a prima facie case of retaliation.

Even assuming, arguendo, that Plaintiff has set forth a prima facie case of retaliation, a reasonable factfinder could only find that Defendant has shown legitimate, nonretaliatory reasons for the actions taken, and could further only find that Plaintiff has not rebutted these reasons. *See Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007). Plaintiff was given a one-day suspension due to her constant attendances issues, absences from work, and failure to follow instructions she had been given in an attempt to correct the issues. Accordingly, the Court will grant Defendant's motion for summary judgment on the retaliation claim.

### C. Hostile Work Environment

While not clear, it may be that Plaintiff is also alleging a hostile work environment. To make out a prima facie claim for hostile work environment on the basis of sex, a plaintiff "must establish 1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). Hostile work environment claims based on religion are subject to a comparable test. *See Abramson*, 260 F.3d at 276. "To determine whether an environment is hostile, a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Mandel*, 706 F.3d at 168 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "'[S]imple teasing,' offhand comments, and

isolated incidents (unless extremely serious) will not amount to" a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)).

Plaintiff has not shown that she suffered intentional discrimination because of her sex or religion. At most, she has shown that Doyle made a number of comments which could be construed as insensitive. Some of the comments occurred in Plaintiff's presence and others are alleged to have occurred outside her presence. A plaintiff cannot "meet the first element of the hostile work environment claim under Title VII . . . solely by pointing to comments that were directed at other individuals." *Caver v. City of Trenton*, 420 F.3d 243, 263 (3d Cir. 2005). However, such comments may elucidate whether facially neutral conduct was motivated by discrimination. *See id.* at 264. "[C]onduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788.

Most of the comments made by Doyle were directed towards Plaintiff's work attire. In some instances, Doyle commented on Plaintiff's inappropriate dress, while in others he made comments indicating he liked what she wore. Because of these comments, Plaintiff believed that Doyle was "infatuated with the clothes" she wore. Notably, the record reflects that Fletcher (a female) also made comments about Plaintiff's attire and that Plaintiff was counseled regarding her work attire. (*See* D.I. 14 at 9-17) Prior to a January 2011 hearing on Plaintiff's work attire, and apparently in preparation for the hearing, Doyle sent an email to David Wesley ("Wesley") in Human Relations, and to Fletcher, which contained a photo of Plaintiff that displayed her breast. (D.I. 14 at 12-15) The email was not sent to Plaintiff. In July 2011, Plaintiff "found out that Doyle had been repeatedly talking about a showing a picture of [her] breast to people outside of [work]." (*Id.* at 14)

The comments made by Doyle directly to Plaintiff were perhaps insensitive but not the sort of comments a reasonable factfinder, considering the record as a whole under the appropriate standards, could find to constitute harassment. The other incidents either occurred outside the workplace, were not directed towards Plaintiff, and/or were made following complaints about Plaintiff's work attire. The evidence of record does not support a reasonable factfinder finding discrimination on the basis of sex or religion sufficient to support a hostile work environment claim. Therefore, the Court will grant Defendant's motion for summary judgment on the hostile work environment claim.

D. Motion to Compel

In Plaintiff's opposition to Defendant's motion for summary judgment, she moves the Court to compel Defendant to respond to her discovery requests. (D.I. 39) The discovery requests were served upon Defendant on January 30, 2017. (*See* D.I. 32, 33) The scheduling order provided for the initiation of all discovery so it would be completed on or before January 31, 2017. (D.I. 31) Plaintiff served her discovery one day before the expiration of the discovery deadline, making it impossible for Defendant to respond on or before January 31, 2017. *See* Fed. R. Civ. P. 33 (responding party must serve its answers within 30 days after being served with interrogatories); Fed. R. Civ. P. 34 (party to whom request for production is directed must respond within 30 days after being served).

Plaintiff did not timely serve her discovery requests. Therefore, the Court will deny her motion to compel. (D.I. 39)

V. CONCLUSION

For the above reasons, the Court will: (1) grant Defendant's motion for summary judgment (D.I 37); and (2) deny Plaintiff's motion to compel (D.I. 39).

An appropriate Order will be entered.